**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | No. 2:09-cr-00296-DCN-2 |
| ) | |
| EDWARD MCCAIN, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on defendant Edward McCain's ("McCain") motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, ECF No. 182, and the United States of America's (the "government") motion to dismiss and motion for summary judgment, ECF No. 208. For the reasons set forth below, the court denies McCain's motion and grants the government's motion for summary judgment.

**I.  BACKGROUND**

McCain's conviction arose from offenses that he committed in 2008, when he was seventeen years old. At the time, McCain and Pierre Sanders ("Sanders") were dealing heroin in Georgetown, South Carolina. On November 14, 2008, two individuals—Glen Crawford, Jr. ("Crawford") and James Fannin ("Fannin")—picked up McCain in their car and drove him to a park, ostensibly to purchase heroin. McCain and Sanders were under the impression that the two were setting them up, and upon arriving at the park, McCain emptied his pistol into Fannin and Crawford. Seeing that one of the victims was still moving, McCain ran to his grandmother's house nearby in search of more bullets. Finding none, he grabbed a knife instead, but upon his return, crowds and police had

1

gathered around the scene. Fannin died from the gunshot wounds, while Crawford survived with permanent and disabling injuries.

On April 15, 2009, McCain and Sanders were indicted on multiple counts related to the murder or Fannin and the attempted murder of Crawford. ECF No. 32. McCain later pleaded guilty to three counts of the indictment: witness tampering by murder in violation of 18 U.S.C. § 1512(a)(1)(C) (Count One); witness tampering by attempted murder in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Two); and using and carrying a firearm during and in furtherance of a drug trafficking crime and a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(j) (Count Five). ECF No. 71. Importantly, McCain's plea agreement contemplated that in return for McCain's substantial assistance, the government would move for a downward departure or reduction of sentence pursuant to United States Sentencing Guideline ("U.S.S.G." or "Guidelines") § 5K.1.1 and/or Federal Rule of Criminal Procedure 35(b). ECF No. 69 ¶ 11. But prior to sentencing, McCain sent letters threatening harm to Crawford, Sanders, and two other individuals, which the United States Probation Office ("USPO") deemed to be obstruction under U.S.S.G. § 3C1.1. ECF No. 152, Rev'd PSR ¶¶ 26, 30. On March 9, 2010, the court sentenced McCain to life imprisonment as to Counts One and Five and thirty years as to Count Two, to be served concurrently. ECF No. 92.

McCain appealed his sentence to the United States Court of Appeals for the Fourth Circuit, asserting that the court erred in accepting McCain's plea and in sentencing him. On February 28, 2011, the Fourth Circuit affirmed McCain's convictions and sentence. ECF No. 114; United States v. McCain ("McCain I"), 413 F. App'x 628 (4th Cir. 2011) (per curiam). On June 21, 2016, McCain filed his first motion

to vacate his sentence under 28 U.S.C. § 2255.  ECF No. 119.  The government consented to a resentencing.  The court held a hearing on the motion and issued an amended judgment where it agreed to consider McCain's request to be sentenced as though he were a seventeen-year-old juvenile, rather than as an adult.  ECF Nos. 153, 156.  Even so, the court concluded that McCain's terms of imprisonment should remain the same, i.e., McCain remained committed to a life sentence as to Counts One and Five.  ECF No. 156.  McCain appealed the decision to the Fourth Circuit, and on September 10, 2020, the Fourth Circuit affirmed the sentence.  ECF No. 171; United States v. McCain ("McCain II"), 974 F.3d 506 (4th Cir. 2020).  McCain then filed a petition for a writ of certiorari to the United States Supreme Court.  ECF No. 176.

On June 14, 2021, McCain, proceeding pro se, filed the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  ECF No. 182.  On July 26, 2021, the government filed a motion to dismiss the motion to vacate on the grounds that the motion was premature because a direct appeal to the Supreme Court was still pending.  ECF No. 185.  Before the court ruled on the government's motion to dismiss, the Supreme Court denied McCain's petition for writ of certiorari on October 4, 2021.  ECF No. 190.  On October 22, 2021, McCain filed a motion for summary judgment on his motion to vacate, arguing that the government's motion to dismiss had been rendered moot.  ECF No. 191.  On December 6, 2021, the court ordered the government to file a supplemental response to McCain's motion to vacate.  ECF No. 192.  On March 17, 2022, the court granted the government's motion for extension of time, which requested an extension so that it could procure the affidavit of McCain's counsel to respond to his

allegations of ineffective assistance of counsel.[1]  ECF Nos. 203, 204.  The government appeared to eventually forego the affidavit, and on June 1, 2022, the government filed its motion to dismiss or motion for summary judgment.  ECF No. 208.  On August 15, 2022, McCain responded to the government's motion.[2]  ECF No. 214.  On May 10, 2023, the court appointed McCain with counsel to represent him on his § 2255 petition and related motions.  ECF No. 241.  On June 21, 2023, McCain's court-appointed counsel moved to withdraw, indicating that McCain was satisfied with the grounds raised in his pro se filings.  ECF No. 245.  The court granted the motion on July 20, 2023.[3]  ECF No. 247.  As such, the motion to dismiss or motion for summary judgment[4] is now ripe for review.

The court also briefly reviews the procedural history postdating the initial motion.  On September 6, 2022, McCain filed a motion for release from custody while his § 2255 petition remained pending.  ECF No. 215.  The court denied the motion on November 3, 2022, ECF No. 217, and McCain appealed the interlocutory decision to the Fourth Circuit, ECF No. 220.  On February 24, 2023, the Fourth Circuit construed his motion as a motion for release on bail pending adjudication of his § 2255 motion and dismissed it for failure to obtain a certificate of appealability.  ECF No. 228; United States v. McCain,

---

[1] The court granted the government two extensions of time.  ECF Nos. 195, 196.  McCain filed several objections to the court's decisions to grant the extensions rather than rule on McCain's motion for summary judgment.  ECF Nos. 194, 201, 207.  The court overruled the objections.

[2] McCain also filed a motion styled as a motion to implement the law of the case.  ECF No. 206.  The court construes McCain's motion as a supplement in support of his motion to vacate.

[3] McCain has since moved for the appointment of a different attorney, but based on the grounds raised in his motion, ECF No. 246 at 2–4, the court finds that such an appointment is unwarranted.

[4] Because the court considers matters outside the pleadings, it treats the government's motion to dismiss and motion for summary judgment as simply one for summary judgment.

2023 WL 2207596 (4th Cir. Feb. 24, 2023) (per curiam). In the interim, McCain also filed: (1) a motion styled as an emergency motion for summary judgment, ECF No. 226; (2) a motion requesting a three-judge district court panel, ECF No. 227; (3) a motion styled as a "motion to introduce damning evidence," ECF No. 231; (4) a motion for immediate release, ECF No. 234; and (5) a motion styled as a "request of judicial compassion," ECF No. 244. For the same reasons specified in this order, the court denies these motions as well.

## II.   STANDARD

### A.  28 U.S.C. § 2255 Petition

Pursuant to 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The petitioner must prove the grounds for collateral attack by a preponderance of the evidence.[5] See King v. United States, 2011 WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)).

### B. Motion for Summary Judgment

If, on a motion to dismiss, the court considers matters outside of the pleadings, such as a party's supporting memoranda and attachments, the court treats the motion as

---

[5] In deciding a § 2255 petition, the court shall grant a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The court has reviewed the record in this case and has determined that a hearing is not necessary.

one for summary judgment. Fed. R. Civ. P. 12(d). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Because here, the court considers matters outside the pleadings, it treats the government's motion to dismiss and motion for summary judgment as simply one for summary judgment.

### C. Pro Se Litigants

Petitioner is proceeding pro se. Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.3d 387, 390–91 (4th Cir. 1990).

### III.   DISCUSSION

McCain raises four grounds for relief in his § 2255 motion. Ground One of the motion asserts that Count Five of the superseding indictment was facially defective because it failed to specify the predicate crime of violence. ECF No. 182 at 4. Ground Two of the motion alleges that McCain was misinformed about the mandatory sentence for Count Five prior to entering a plea. Id. at 5. Ground Three alleges ineffective

assistance of counsel at sentencing. Id. at 7. Ground Four generally alleges violations of McCain's Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel. Id. at 8.

As a preliminary matter, the court finds that McCain's claims are procedurally defaulted. Because appeal is the "usual and customary method of correcting errors," a collateral attack under § 2255 provides a far more limited opportunity for relief than a direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982). Under the doctrine of procedural default, claims of error that could have been raised on direct appeal, but were not, may not be asserted in collateral proceedings unless a petitioner shows either (1) cause for the default and actual prejudice, or (2) demonstrates that he is actually innocent of the offense. Bousley v. United States, 523 U.S. 614, 621–22 (1998). Failure to establish either prong of this test is fatal to the petitioner's challenge to the procedural bar.

Here, McCain acknowledges in his petition that he did not raise Grounds Two, Three, or Four in any direct appeal or other proceeding. See ECF No. 182 at 9 ("Grounds Two, Three, and Four have not been previously raised . . . ."). As for Ground One—which again, alleged that Count Five of his superseding indictment was facially defective—McCain claimed that he previously raised the issue in a motion before this court. Although he did not specify, McCain appears to be referring to a motion he filed shortly before his § 2255 motion, which was styled as a motion to review indictment. ECF Nos. 177, 181. But in his petition, McCain acknowledged that Ground One was never raised on direct appeal. See ECF No. 182 at 4 (answering "No" to whether McCain raised the issue on appeal and explaining that he "didn't raise it because [he] only found

7

out when the 4th Circuit denied . . . [his] direct appeal"). In his response to the government's motion for summary judgment, McCain appears to change tack, arguing for the first time that his appellate counsel had "squarely" presented the issue to the Fourth Circuit. ECF No. 214 at 1. McCain refers to appellate counsel's argument that the "the district court erred in accepting McCain's guilty plea," which the Fourth Circuit rejected. Id.; ECF No. 114 at 1–2. McCain did not raise a deficiency with the superseding indictment on direct appeal. Thus, McCain was correct on the first go-around when he stated that none of the issues had been presented on direct appeal, and each of McCain's claims must be screened for (1) actual innocence or (2) cause and resulting prejudice.

Under the cause and actual prejudice test, "cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. See Frady, 456 U.S. at 170. Neither prong is satisfied for any of McCain's claims. McCain argues that all four grounds were not raised on direct appeal because he only discovered their availability after the Fourth Circuit denied his direct appeal. See ECF No. 182 at 4, 5, 7, 9 (explaining why McCain did not raise Grounds One, Two, Three, and Four, respectively, on direct appeal). But as Mikalajunas and other cases instruct, cause must be premised on something external to the defense. McCain's mere failure to discover the viability of new arguments until after the Fourth Circuit ruled on his direct appeal does not constitute cause.

In his response to the motion for summary judgment, McCain adds that the court should find cause based on the novelty of his claims. See ECF No. 214 at 3 ("[T]he novelty of the claim demand the instant habeas petition NOT BE procedurally defaulted.") (emphasis in original). But McCain does not specify how any of his claims are novel, and in any event, the argument is without merit. A novel claim is one that was "not reasonably available to counsel"; it must be based on a "new constitutional rule, representing a clear break from the past." Reed v. Ross, 468 U.S. 1, 16–17 (1984) (internal quotation marks and citation omitted). McCain's grounds for relief are not premised on new constitutional rules, nor does he claim that to be the case. For example, McCain argues that prior to his plea, he was misinformed about the minimum sentence for his charge under 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(j), but he does not identify a Supreme Court decision that overruled the law from the time of his sentencing. See id. at 17 (remarking upon the three situations in which a Supreme Court decision causes a "break from the past" and demonstrates the existence of a novel issue). As such, the court is constrained to find that McCain's claims are procedurally defaulted. For McCain's benefit, however, the court proceeds to consider each ground for relief that he raises, ultimately finding that they lack merit even if they were not procedurally barred.[6]

---

[6] In addition to arguing that his procedural default should be excused, McCain requests that the court excuse the untimeliness of his § 2255 motion as he believed he filed his motion after the one-year limitations period had run. ECF No. 182 at 10. But the limitations period is not at issue in this case—the government correctly acknowledges that McCain's motion is timely. ECF No. 208-1 at 2. McCain filed his § 2255 motion within a year of the Fourth Circuit affirming his amended judgment, and before the Supreme Court denied writ of certiorari, so regardless of which date is applied, McCain filed his motion within a year of when his judgment and conviction became final. See 28 U.S.C. § 2255(f)(1).

### A. Ground One

In Ground One, McCain argues that Count Five of the superseding indictment is facially defective because it failed to denote the predicate crime of violence used to indict him for using and carrying a firearm during and in furtherance of a drug trafficking crime and a crime of violence. McCain claims not to have learned that the predicate crime of violence was witness tampering by murder until the Fourth Circuit informed him of that fact in its 2020 opinion.

As an initial matter, there is ample reason to doubt McCain's claim. In his reply brief on appeal of the amended judgment, McCain specifically argued, via appellate counsel, that "Prosecutions under § 924(c) arise in conjunction with prosecutions for other underlying offenses; here the underlying offenses were charged under 18 U.S.C. §§ 1512 and 1513, which broadly criminalize activities constituting tampering with and retaliating against witnesses." Appellant's Reply Brief at 9, United States v. McCain, No. 18-4723 (4th Cir. Sept. 18, 2019), Dkt. No. 55. There is a slight chance McCain did not personally know that the predicate crime of violence was witness tampering by murder, but "[u]nder the common law a lawyer speaks for h[is] client." Lane v. Richards, 957 F.2d 363, 365 (7th Cir. 1992).

Assuming the court believes McCain's account, it is still unclear what legal import his argument carries. The government argues that McCain's claim is subject to dismissal for several reasons. First, the Fourth Circuit ultimately determined that witness tampering by murder is a proper predicate crime of violence. See McCain II, 974 F.3d at 514 n.2 (upholding McCain's sentence based on the Fourth Circuit's decision in United States v. Mathis, 932 F.3d 242 (4th Cir. 2019)); see id. ("[W]itness tampering by murder

in violation of Section 1512(a)(1) . . . is categorically a crime of violence under the force clause of Section 924(c)(3)(A)"). To the extent that McCain is arguing that the court improperly applied the predicate offense, the Fourth Circuit's prior opinion forecloses review of that issue.

By arguing that the indictment is "facially defective," McCain appears to be claiming that his conviction should be overturned based on the indictment itself. In response, the government argues that it was never required to disclose the specific predicate offense in the indictment. Under Fourth Circuit precedent, "the government is under no obligation to specify a specific predicate offense in a § 924(c) charge." United States v. Randall, 171 F.3d 195, 205 (4th Cir. 1999) (cited at ECF No. 208-1 at 7). McCain objects to the government's reliance on Randall, claiming that the court's ruling was limited to § 924(c). He then contends that according to the Fourth Circuit, § 924(c) and § 924(j) are separate and discrete offenses, and Randall does not apply here.[7] ECF No. 214 at 11–12 (citing United States v. Bran, 776 F.3d 276 (4th Cir. 2015)); see also Bran, 776 F.3d at 283 ("[A] § 924(j) offense is discrete from a § 924(c) offense, and must be treated accordingly."). The problem for McCain is that he cites a passage found in the court's partial dissent. Indeed, the majority opinion in the same case is best read as supporting the conclusion that courts should apply the same principles to § 924(j) as those applied to § 924(c) unless explicitly provided otherwise. In Bran, the court

---

[7] McCain also notes, correctly, that the Fourth Circuit in Randall went on to find that if the government does specify a predicate offense, it is not allowed to later "broaden the bases of conviction to include [a] different § 924(c) predicate offense." Randall, 171 F.3d at 210 (cited at ECF No. 214 at 12). But that cautionary instruction does not apply here. There is no contention in this case that the government added a new, separate predicate offense.

determined that a § 924(j) violation was subject to the same consecutive sentence mandate of § 924(c).  Bran, 776 F.3d at 281.  The court reasoned that since § 924(j) was silent on the issue, Congress clearly intended for the statute to incorporate § 924(c) by reference.  See id. ("[W]e must consider § 924(j) in the context of § 924(c).").  In other words, "because of the inclusion of the § 924(c) language, to prove a violation of § 924(j), the government must prove that a defendant also committed a violation of § 924(c)."  Id. at 282 (citation omitted); accord United States v. Nina, 734 F. App'x 27, 36 (2d Cir. 2018) ("A number of our sister circuits have held that section 924(j) incorporates the entirety of [sub]section (c) . . . .") (citing, inter alia, Bran, 776 F.3d at 282).

If § 924(c)'s penalty provisions apply to § 924(j), it follows that § 924(c)'s requirements about disclosing predicate offenses apply as well.  The court has not identified any cases that have explicitly held § 924(j) is unique with respect to providing the essential elements of a predicate offense.  Rather, district courts have applied Randall to other § 924 charges, including § 924(j).  See United States v. Montalvo, 2014 WL 3894377, at *2 (W.D.N.Y. Apr. 16, 2014), report and recommendation adopted, 2014 WL 3894383 (W.D.N.Y. Aug. 8, 2014) (finding that a charge for a § 924(j) violation did not need to define the elements of the predicate crime of violence); cf. United States v. Wiley, 2021 WL 1060207, at *3 (M.D.N.C. Mar. 19, 2021), appeal docketed (same, for a § 924(o) charge).  Therefore, the court is satisfied that the indictment was not defective, even if McCain is correct that it failed to specify the underlying offense at the time it was created.

Finally, the government argues that McCain waived any right to assert that the superseding indictment was defective when he pleaded guilty to the offense. It is well established that "[a] guilty plea effects a waiver of all non-jurisdictional defects in the indictment." United States v. Quarles, 453 F. App'x 319, 321 (4th Cir. 2011) (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993)). Alleged defects in the indictment are not jurisdictional. Id. (citing United States v. Cotton, 535 U.S. 625, 631 (2002)). In response, McCain argues that a waiver must be valid in order to be enforced. ECF No. 214 at 10. But McCain is foreclosed from arguing that his guilty plea was invalid. McCain's appellate counsel acknowledged on direct appeal that the district court properly inquired about the plea before accepting it. Appellant's Opening Brief at 9, United States v. McCain, No. 10-4252 (4th Cir. June 14, 2010), Dkt. No. 21; see also McCain I, 413 F. App'x at 629. Even setting aside the acknowledgment from McCain's attorney, the Fourth Circuit independently determined that the court did not err in accepting the plea. McCain I, 413 F. App'x at 629. Thus, McCain entered into a valid plea agreement and waived any arguments regarding non-jurisdictional defects in the indictment.

For each of the independent reasons discussed above, the court dismisses Ground One in McCain's § 2255 motion.

**B. Ground Two**

Under Ground Two, McCain argues that he was misinformed by his lawyer, the district court, and the Fourth Circuit that Count 5 in the indictment carries a mandatory life sentence. ECF No. 182 at 5. McCain claims that he only learned after the Fourth Circuit issued its 2020 opinion that a § 924(j) firearm offense carries a sentence up to life

13

imprisonment. Id. (citing McCain II, 974 F.3d at 513). According to McCain, had he been properly informed about the sentence for a § 924(j) offense, he would not have entered a guilty plea.

In its motion for summary judgment, the government concedes McCain was wrongly informed that he faced a mandatory sentence of life in prison for the § 924(j) offense. ECF No. 208-1 at 11 ("McCain was incorrectly informed during the plea colloquy and in his plea agreement that he was facing a mandatory life sentence under Count Five . . . ."). In addition to statements to that effect made during the plea colloquy and in the plea agreement, ECF Nos. 69 at 3, the Fourth Circuit stated in its 2011 opinion that "McCain's life sentences were mandated by statute" and that under § 924(j), the "penalty for use of a firearm which causes death is a sentence of death or life imprisonment." McCain I, 413 F. App'x at 629. The Fourth Circuit later clarified in its 2020 opinion that § 924(j) "authorized the district court to sentence McCain to a term of years up to life but did not mandate a sentence of life imprisonment." McCain II, 974 F.3d at 514.

Although the government concedes the point, the court briefly reviews the underlying issue. Section 924(j) provides that the offense is punishable "by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j). Even recently, some courts have viewed the statute (albeit in dicta) as mandating a mandatory sentence of death or life in prison. See United States v. Palacios, 982 F.3d 920, 923 (4th Cir. 2020) ("Section 924(j) . . . carries a mandatory sentence of death or life in prison."); United States v. Byars, 2021 WL 2964255, at *1 (W.D.N.C. July 14, 2021) (noting that the defendant "faced . . . a mandatory sentence of either life in prison or death for the section

14

924(j) firearm offense"). But other courts that have directly confronted the issue have confirmed that the rule articulated in McCain II is the correct one. In United States v. Young, the Fourth Circuit held that in referencing 18 U.S.C. § 1111, § 924(j) only incorporates the definition of murder; it does not incorporate any other elements, including the penalties for murder (which, under § 1111(b), mandate punishment by death or imprisonment for life). 248 F.3d 260, 274–75. The Sixth Circuit, relying on Young, added that to treat a conviction under § 924(j) as a "de facto mandatory minimum life sentence" would mean treating the "term of years language" in the statute as surplusage. United States v. Ostrander, 411 F.3d 684, 687 (6th Cir. 2005). Therefore, the court agrees that McCain should have been instructed that § 924(j) carries a sentence up to life, instead of for life.[8]

Despite this error, the government argues that McCain was not prejudiced by the error, and the court agrees. For McCain's benefit, the court applies the plain error standard of review. See United States v. Crawley, 2021 WL 2910724, at *2 (W.D. Va. July 12, 2021) (citing Frady, 456 U.S. at 166) (explaining that although courts use the plain-error standard to determine whether the Rehaif prejudice threshold is met on direct appeal, the framework is "instructive" on collateral review). To satisfy the plain error standard, McCain must show: "(1) an error was made; (2) the error is plain; and (3) the error affects substantial rights." United States v. Massenburg, 564 F.3d 337, 342–43 (4th Cir. 2009); but see United States v. Jackson, 2021 WL 694848, at *11 (D.S.C. Feb. 21,

---

[8] As a result of this analysis, the court acknowledges—but does not further address—McCain's argument that the district court and the Fourth Circuit in the 2011 opinion were "legislating from the bench" by interpreting § 924(j) as requiring a mandatory sentence of life in prison. ECF No. 214 at 1–5.

2021) (holding that on collateral review, "the defendant must still demonstrate the error worked to his actual and substantial disadvantage").

The government argues that the error did not prejudice McCain as it did not affect his substantial rights. First, the government argues that because McCain was informed that he faced up to a life sentence, he should have been aware of the possibility that he would end up receiving a statutory maximum sentence of life imprisonment. The court expresses some doubt over this first argument. The government cites United States v. Foster, 68 F.3d 86 (4th Cir. 1995), for the proposition that where a trial court properly informs a defendant of the potential sentence he faces, the defendant cannot claim to be prejudiced by any misinformation provided by counsel. But in Foster, the district court corrected the information that the defendant received about his sentence at the Rule 11 hearing. 68 F.3d at 88. Here, however, the court did not recognize the error at the plea colloquy. McCain's apprehension that he could receive up to a life sentence is not comparable to understanding the sentence he faced from a proper instruction. As such, the court overrules the government's first argument.

Second, the government argues that McCain could not have been prejudiced by the error because he also pleaded guilty to a mandatory life sentence under Count One. The court finds this argument to be more compelling. Even if McCain had been instructed and knew that he could potentially receive less than a life sentence for Count Five, McCain failed to prove that the error affected his substantial rights because a proper instruction would not have affected McCain's decision to plead guilty to Count One, which carried a mandatory life sentence. Other courts have reached similar conclusions. See United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) ("[K]nowledge of the

16

comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."); cf. United States v. Ward, 796 F. App'x 591, 600 (11th Cir. 2019) (explaining, in the context of a Rehaif claim, that the fact a defendant had received other sentences punishable by more than one year of imprisonment should have indicated that he knew the predicate had been satisfied); Jacobs v. United States, 2021 WL 5989077, at *3–4 (M.D.N.C. Dec. 17, 2021) (same).[9] There is nothing in the record that suggests McCain would not have pleaded guilty to Count Five if he had been properly informed about the sentencing exposure because his other charge carried the same mandatory life sentence. Accordingly, the court dismisses Ground Two.

## C. Ground Three

In Ground Three, McCain asserts that his trial counsel rendered ineffective assistance by advising McCain to enter a guilty plea. ECF No. 182 at 6. McCain claims the attorney "misinformed" him about the "nature and consequences" of the guilty plea. Id. To prove that counsel's ineffective assistance resulted in an involuntary plea, a petitioner must who that counsel's conduct "fell below an objective standard of reasonableness" and resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). To demonstrate prejudice, a petitioner must establish "'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988)

---

[9] Third, the government argues that upon being resentenced, McCain became aware that the penalty for Count Five was up to life imprisonment, further proving that there was no prejudice. ECF No. 208-1 at 16. The court has searched and is unable to find any record supporting that assertion but dismisses Ground Two for the reasons articulated.

(quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). As discussed above, McCain cannot show that but for counsel's failure to inform him about the proper sentence for Count Five, McCain would not have pleaded guilty. For the same reason, then, the court dismisses Ground Three.[10]

### D. Ground Four

In Ground Four, McCain alleges that he is "being illegally detained as a result of . . . a void guilty plea, in violation of [his] 5th and 6th Amendment protection[s]." ECF No. 182 at 8. As far as the court can tell, this ground appears to rely solely on the arguments raised in McCain's prior grounds for relief. For the same reasons discussed above—namely, that McCain cannot show his indictment was defective or that he entered into an involuntary plea—the court dismisses Ground Four.

### E. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 proceedings provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003). McCain does not meet

---

[10] While this could be said of all his grounds for relief, McCain's failure to raise this claim on direct appeal is particularly glaring here. Had McCain raised the claim then, the appellate court could have reviewed the evidence and record closer to the time of the alleged error. To be clear, the court emphasizes that McCain has not shown cause or prejudice for his default.

this standard because there is nothing debatable about the court's resolution of his § 2255 petition. Accordingly, the court will deny a certificate of appealability.

### III. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.[11]

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 23, 2023**
**Charleston, South Carolina**

---

[11] As the court noted in the background, McCain also filed several miscellaneous motions, including: (1) a motion styled as an emergency motion for summary judgment, (2) a motion requesting a three-judge district court panel, (3) a motion styled as a "motion to introduce damning evidence," (4) a motion for immediate release, and (5) a motion styled as a "request of judicial compassion." For the same reasons specified in this order, the court denies these motions as well.